1. Where a motion for new trial contains only the general grounds, and the record discloses that the evidence for the State, if credible, was sufficient to support the verdict, the jury being the judges of the weight of the evidence, this court can not disturb the judgment of the trial court. Puckett v. State, 159 Ga. 230 (125 S.E. 208); Hudgins
v. State, 2 Ga. 173 (5). "The law allows him [the trial judge] to refuse or grant new trials in the exercise of a legal discretion, but it does not give this court any discretion in the matter. It can only grant new trials where errors of law have been committed, or when the trial judge has abused his discretion in refusing a new trial." Smith v. State, 91 Ga. 188 (17 S.E. 68).
2. The Judge having approved the verdict, we can not say in the light of all the evidence that he abused his discretion in overruling the motion for a new trial.
Judgment affirmed. Broyles, C. J., and Gardner, J.,concur.
 DECIDED JANUARY 7, 1944. REHEARING DENIED MARCH 24, 1944. *Page 830 
 STATEMENT OF FACTS BY MacINTYRE, J.
The testimony for the State was, in effect, that F. M. Parker, who was in the possession of an automobile owned by his employer, Morton Salt Company, parked the automobile in the street in front of the store of J. F. Ratliff Son, in Blackshear, Georgia. Leaving the key in the switch of said car, he went in and saw Mr. Ratliff, then walked across the street to the Pierce Trading Company's store, and had just gotten over there when John R. Dixon called him and told him that the Morton Salt Company's car was being driven off. He rushed back to Ratliff's store, got in a car with Ira Lee, and took off in pursuit of the Morton Salt Company's car. The sheriff had been notified, and told them to go ahead, and he would follow. Parker and Lee stopped at Avant's filling station and borrowed a gun. They were told by some man that he thought that the car had just passed Avant's place. They went on to Ancil Davis's farm and Davis told them that the Salt Company's car had just passed, and that he thought Parker was in it. Davis called Bristol, and a man named Kimmons, who answered the telephone, said that the car had just passed Bristol, and that Jim Kimmons was following the car looking right at it. They went on across Big Creek. Sheriff Carter had joined in with Lee and Parker, and after crossing the creek, they found that the car had gone down the road toward Baxley. They went up the road some three miles, and after finding that the car had not gone that far, turned and came back toward the bridge, looking at the car tracks in all of the roads turning off from the main highway until they got back within about half a mile of the bridge, where they saw that a car had turned off on an old road leading down to the creek. They followed this old road and the car tracks as far as they cared to drive their car through the oak thicket; they got out and walked on through the thicket following the car tracks to a point about a mile from the main highway where the car was found, stripped to the ground. The generator was gone, the spare tire and the battery taken off. The car was found about 5 o'clock, some three hours after it was stolen. The wheels, spare tire, generator, and battery were all found hidden in different places in the *Page 831 
woods, some of them half a mile or more from the car, and all were recovered. There was direct evidence, of course, as to the theft; but the evidence connecting the two defendants charged was circumstantial. The defendants, Moody and Boatright, were in Blackshear that morning. Sheriff Carter testified that he saw Moody in town, and both defendants admitted in their statements that they were in town, but claimed they left around noon in a car with another man. Two persons stole the car. The witness Lee saw them drive off, but was unable to recognize them. The quickness with which they stripped the car of all its wheels, spare tire, etc., hiding them in different places, indicated strongly that more than one man was in on the enterprise. Two sets of shoe tracks leading from the car down to the creek were found; and two pairs of shoes and socks were found down by the creek in or near the foot tracks — shoe tracks ending there, and barefoot tracks beginning. The sheriff testified that where the shoe tracks stopped there was a place where someone had sat down on the dirt (evidently to remove the shoes). The barefoot tracks, two sets, beginning where the shoe tracks ended, proceeded across the creek, partly on footlogs, and were so fresh that it was still muddy water where they had stepped, and still wet on the foot-log. These tracks crossed the creek, and went out on the hill in the direction of where T. H. Smith lived. During that afternoon, and before the sheriff went to Smith's place near night, the two defendants came up to Smith's place, both being barefooted. Boatright asked Smith about selling him some tires in the presence of the defendant Moody. When told by Smith that he did not need any, or did not want any, Boatright suggested that he see Turner in Alma if he found that he did want some. The two defendants then arranged with T. J. Smith, brother of T. H. Smith, to take them to Mershon in his car, and they went together from there to Coffee, and then by train to Alma. As soon as they reached Alma they got in touch with Alton Turner, the man Boatright had requested Smith to see if he wanted any tires. It was night by the time they reached Alma. Turner then took them in his car and carried them back into the community where the stolen car had been found, turning around in the road not far from where the stolen car had left the main road. This circumstance is important because the jury might have determined that the defendants and Turner were going to the stolen *Page 832 
car and changed their minds when they must have found out the car had been found, or that the sheriff was on their trail. There is another circumstance which the jury could have considered as being incriminating, to wit: That both defendants hid out and avoided arrest for several weeks, although they knew they were charged with the theft, and that the sheriff was never able to locate them, although he went into their community several times, until they decided they were ready to make bond and got in touch with the sheriff. The defendant made a statement denying that he was guilty.